CHARLES BERGGREN, Appellant, v. DANIEL F. CALLAHAN et al., Defendants, Mohall State Bank, a Corporation, and W. H. McIntosh, Receiver of the Mohall State Bank, a Corporation, Respondents.

(214 N. W. 36.)

**Mortgages — sale of mortgage — not fraudulently sold.**

    Callahan executed and delivered to defendant bank two promissory notes, one for $2,000, and one for $1,500, each secured by a mortgage on the same land. The .notes and mortgages were simultaneously executed and delivered. The bank recorded both mortgages, and sold the $2,000 mortgage to plaintiff. Plaintiff's mortgage was recorded six minutes later than the other. On bringing this action to foreclose his mortgage, plaintiff alleged that the bank falsely represented his mortgage to be a first mortgage lien, and prayed for judgment decreeing his mortgage to be a prior and superior lien to the mortgage held by the bank. For reasons stated in the opinion, plaintiff failed to establish fraud.

Opinion filed June 1, 1927.

Mortgages, 41 C. J. § 562 p. 601 n. 65.

Appeal from District Court of Bottineau County, *Burr,* J.

Action to foreclose mortgage, and for decree adjudging mortgage to be a first lien. Plaintiff appeals.

Affirmed.

*George I. Rodsater,* for appellant.

*J. J. Weeks,* for respondents.

ENGLERT, Dist. J. · The plaintiff commenced this action to recover the sum of two thousand dollars, with interest at eight per cent from October 31, 1920, and for foreclosure of his mortgage, and that his mortgage be declared a first mortgage lien upon the north half ($N\frac{1}{2}$) of the southwest quarter ($SW\frac{1}{4}$) of section eighteen (18), township one hundred sixty-one (161), north, range eighty-three (83), west of the fifth principal meridian, of Bottineau county, North Dakota.

The defendant, Mohall State Bank, through W. H. McIntosh, as receiver of said bank, answered, claiming that a certain fifteen hundred dollar mortgage held by it was a first mortgage upon the said premises, and in prior and superior lien to that claimed by the plaintiff.· The defendant Daniel F. Callahan, maker of the said mortgages, answered and alleged discharge in bankruptcy. Later on, he withdrew his answer on a stipulation that no personal judgment would be taken against him. The remaining defendants, served with process, did not answer or appear at the trial.

The point in controversy is whether plaintiff's two thousand dollar mortgage or the bank's fifteen hundred dollar mortgage is a first mortgage on the premises described.

On May 30, 1916, P. A. Peterson, president of the Peoples State Bank of Cannon Falls, Minnesota, in reply to a letter written by the Mohall State Bank, wrote: "Yours of the 26th at hand contents noted, relative to mortgage loan that you wish me to handle for you. Now I want it strictly understood that any loans that you send me to handle for you must be first mortgage loans. I shall refuse to handle any second mortgage loans for you or any one else, I would not under any circumstances buy a second mortgage myself and much less want to sell it to any friend of mine." That letter is known in the record as Exhibit 5.

The mortgages in question were made, executed and delivered by Daniel F. Callahan and Mary Callahan, his wife, on the 31st day of October, 1919, to the Mohall State Bank. The plaintiff's mortgage secured a promissory note in the sum of two thousand dollars, bearing

eight per cent interest, and due October 31, 1921. This mortgage was sold and assigned by the Mohall State Bank to the plaintiff, on the 12th day of November, 1919, as evidenced by exhibit 3. The mortgage retained by the bank was also executed and delivered on the 31st day of October, 1919, to secure the sum of $1,500, bearing 6 per cent interest, and due October 31, 1924. So that both mortgages were executed and delivered simultaneously, and both covered the land hereinbefore described. Both mortgages were recorded on the same day, but the plaintiff's mortgage was recorded six minutes later than the defendant bank's.

P. A. Peterson testified that he conducted the negotiations for the plaintiff in the purchase of mortgage loans. He carried on the negotiations leading up to the purchase of the $2,000 note and mortgage, securing the same, here in question. The negotiations were entirely by correspondence. He testified that the correspondence bearing upon this particular mortgage loan purchased was either lost or mislaid, and could not be produced at the trial. He claims, however, that the Mohall State Bank wrote him wanting to know whether he "was in the market for handling a first mortgage loan," and he answered that he was. That the note was thereupon forwarded by the bank to him, and he remitted by draft the amount thereof, and that the mortgage securing the note, and assignment thereof, were forwarded by the bank about two months later. That he relied on the statements of the bank that the note was secured by a first mortgage, when he sent the two thousand dollars to the bank in payment thereof.

Daniel F. Callahan, maker of the notes and mortgages, in this case, was called as a witness by the plaintiff, and he testified that at the time of signing the notes and mortgages, an officer of the Mohall State Bank told him that the two thousand dollar mortgage was to be a first mortgage, because "he wanted to sell it down east," and that the $1,500 mortgage was to be a second mortgage. The plaintiff did not testify in the case.

The trial court made findings of fact, conclusions of law, and order for judgment in favor of the plaintiff, but decreed his mortgage to be a junior and inferior mortgage to that held by the Mohall State Bank.

The plaintiff appealed, and demanded a trial de novo in this court, under § 7846, Compiled Laws, 1913.

It is the claim of the plaintiff that the Mohall State Bank caused him. to purchase the said note, and pay therefor, on the false and fraudulent representations and statements, that it was secured by a first mortgage, on the premises described.

On the face of the upper left-hand corner, plaintiff's mortgage contains the following: "Mortgage—second—to a corporation." In the body of the mortgage, there appears the following:

"The mortgagors hereby covenant with the mortgagee, its successors and assigns, that they have seized in fee simple of the aforesaid premises; that they are free from all encumbrances except a mortgage for $1,500 due Oct. 31st, 1924, at 6%."

A portion thereof is in the usual stereotyped form, but "$1,500 due Oct. 31st 1924, at 6%," is typewritten, in a blank line provided for such prior encumbrances.

But it is claimed that the Mohall State Bank knew that the plaintiff would purchase only notes secured by first mortgages. He relies upon the letter written by his agent, P. A. Peterson, on June 30, 1916. Mr. Peterson, in his testimony, placed great reliance upon that letter, and declares that the same was never deviated or departed from. The plaintiff, through Mr. Peterson, closed a great many transactions, touching the buying of notes, secured by either mortgages or guaranties, extending over a period of more than three years, and while the correspondence touching the loan here in controversy is either lost or mislaid, there is one letter in the record, exhibit 6, admitted by Mr. Peterson to have been received by him, one paragraph of which states:

"We are also enclosing remittance for the Healy notes, by 4 $1,000 notes which are guaranteed by Wiebe myself and Bergman, and 2 are also guaranteed by J. E. Bryans. Mr. Bryans is the city mayor, and state's attorney, and is worth at least $50,000. The notes are gilt edge even without these endorsements, interest to you from Oct. 27th, 1917 to date of payment at the rate of 8% interest payable annually. The notes are secured by land contracts, but we prefer to keep the contracts here in our files."

This letter was written October 30, 1917, a little over a year after Exhibit 5 was written, and two years prior to the transaction here in question. It is admitted by the plaintiff, through his agent, P. A.

Peterson, that the $2,000 note was accompanied by the following guaranty, attached to the note, and signed by the President, Vice-President, and Cashier, respectively, of the Mohall State Bank:

"For value received, I hereby guarantee the payment of the attached note, made by Daniel F. Callahan and Mary Callahan payable to Mohall State Bank for two thousand dollars, dated Oct. 31, 1919, due October 31st, 1921, and waive protest, demand and notice of nonpayment. Dated Nov. 1, 1919. J. C. Peters. F. W. Wiebe. W. W. Bergman."

It is apparent, from a reading of exhibit 6, that Mr. Peterson bought notes for the plaintiff from the Mohall State Bank without being secured by first mortgages. So the written evidence shows that a little over a year after exhibit 5 was written, both P. A. Peterson, agent for the plaintiff, and the Mohall State Bank, disregarded the terms and conditions set forth in exhibit 5. The fact, therefore, that the correspondence leading up to the consummation of the sale and purchase of the $2,000 note and mortgage securing the same, is lost or mislaid, and not produced at the trial, is of some significance. According to exhibit 6, Mr. Peterson purchased $4,000 worth of notes, accompanied by guaranties.

It is true that Daniel F. Callahan, maker of the notes and mortgages, testified that plaintiff's mortgage was to be a first mortgage. He bases his statement on what an officer of the Mohall State Bank is supposed to have told him at the time the notes and mortgages were executed. There was no agreement between him and the Mohall State Bank as to which one of the two mortgages should be first or second. He was not interested in having one rather than the other a first mortgage. The statement made by the officer of the Mohall State Bank to him was in no manner communicated to the plaintiff. It was, therefore, no part of the agreement on which the plaintiff here relies. Granting that such a statement was made by an officer of the bank to Mr. Callahan, and the only reason for doing so was because the bank wanted to sell one or the other of the notes and mortgages to some one else, would not, by making the other a first mortgage, without more, be a badge of fraud.

The mortgage and assignment thereof, were not accompanied by an abstract, and the plaintiff suggests that that indicates bad faith. But

there is no showing that there was any agreement to furnish any abstract. An abstract was really not requested until February 16, 1921, as shown by exhibit 7. On March 10, 1921, an abstract was furnished, as shown from exhibit 9. But the abstract did not impart any clearer information on the subject than the mortgage itself, except the time of recording.

A reference to the assignment of the mortgage, and recording thereof, confirms our view that the plaintiff, through Mr. Peterson, relied upon the guaranty attached to the note, rather than the mortgage, since he did not record the assignment until January 28, 1921, considerably over a year after the transaction was closed and the note, mortgage and assignment were in his possession.

From the facts in this case, we are not prepared to say that the plaintiff made out a case of fraud. Fraud must be proven. It is never presumed. The law presumes that dealings are fair and honest. It is not enough to allege fraud and prove some suspicious circumstances, but every material element constituting the charge and cause of fraud must be proven. Fraud may be established by circumstances, but they must be so strong as to produce a conviction of the truth of the charge.

The transaction here in controversy was made in November, 1919. At that time, great prosperity prevailed, and banks and bankers were generally regarded as gilt edge credit. The note had attached to it a guaranty signed by the president, vice-president and cashier of the bank. With this guaranty attached to the note, it was readily acceptable to Mr. Peterson, and he at once accepted it and paid therefor.

In 1921, the credit of banks and bankers began to wane. It was then, on January 28, 1921, that Mr. Peterson caused the assignment of the mortgage to be recorded. On February 16, 1921, he asked for an abstract covering the Callahan loan. On March 10, 1921, the same was furnished. On March 14, 1921, he complained for the first time that the Callahan mortgage was a second, and not a first mortgage. A consideration of the written evidence in the case may readily lead one to the conclusion that the complaint made by Mr. Peterson, considerably over a year after the mortgage came into his possession, was an afterthought. The oral evidence of Peterson and Callahan, while not very clear and convincing, is, nevertheless, in the respects herein-

before recited, to the contrary. In addition to what we have already said, the trial court saw these witnesses and heard their testimony, and while this is a trial de novo here, and this court reaches its own conclusion from the entire record, still, the trial court's findings are entitled to a perceptible weight, and this is especially true when it comes to the weight and credit to be given to the evidence of witnesses that testified.

As said in Marquette Nat. F. Ins. Co. v. McCutcheon, 54 N. D. 596, 211 N. W. 433, at 434:

"We may further say, however, that the only questions raised by the plaintiff on the instant appeal are as to the sufficiency of the evidence to sustain the findings of the trial court. Since the case is here for trial de novo, under § 7846, supra, this court must review the record presented and find the facts for itself. But the trial court had the advantage of seeing and hearing the witnesses, while we have only a cold record, so, though the findings of the trial court are not clothed with the same presumptions in their favor as in other cases, nevertheless, this court must give them appreciable weight."

It follows that the judgment of the trial court ought to be affirmed. It is so ordered.

BIRDZELL, Ch. J., and BURKE, CHRISTIANSON, and NUESSLE, JJ., concur.

BURR, J., being disqualified, did not participate; Honorable M. J. ENGLERT, Judge of the First Judicial District, sitting in his stead.