O. O. LEE, Gilbert E. Peterson, Nick Barbie, Henry Burman, E. P.
Crain, C. C. Boise, and A. M. Brandt, as Trustees of an Express
Trust, Doing Business under the Firm Name and Style of the
Glen Ullin Trust, Respondents, v. HERCULES POWDER
COMPANY et al., Defendants.

B. H. DETERS, Rachel N. Deters, W. F. Deters, Alvin W. Defiel,
Chas. A. Hull, E. A. Sprague, Mr. and Mrs. A. F. Gumphrey,
E. J. Foss, A. Holritz, John S. Lomman, H. E. Aldrich, Isaiah
Coffman, C. A. Arpke, T. McHaffie, W. H. Stutsman, C. G.
Knoefel, Edwin J. Stegner, Arthur Stegner, Laura E. Stegner,
E. W. Ostergren, Dan Ostergren, John Christianson, H. G. Ger-
vig, J. A. Gervig, David Cannell, and Esther Cannell, Appellants.

(219 N. W. 565.)

**Corporations — evidence of lack of fraud in failure to pay judgment —
judgment quieting title in plaintiffs relying on judgment supported by
evidence.**

1. A corporation executed a trust mortgage on its property to secure two
hundred fifty notes aggregating $50,000 and agreed to pay existing liens and
mortgages and thus make the trust mortgage a first lien on the property.
Sufficient funds were not realized on note sales to pay off all liens and mort-
gages. An execution was issued on a prior judgment against the company
and the mortgaged property was sold to the judgment creditor and a sheriff's
certificate issued. No redemption was made, and more than a year after the
period of redemption expired a stockholder of the company purchased and
secured an assignment of the sheriff's certificate and obtained a sheriff's deed
to the property. For reasons stated in the opinion, no fraud has been estab-
lished.

**Corporations — absence of fraud — stockholders under no fiduciary relation-
ship with corporation's creditors no constructive trust.**

2. An individual stockholder of a corporation, in the absence of fraud or
bad faith and not being an officer or director of the company, is under no
fiduciary relationship with its creditors and may purchase property lost by
the company's failure to redeem from an execution sale, and no constructive
trust arises in favor of creditors of the company by reason thereof.

Opinion filed May 16, 1928.

Corporations, 14 C. J. § 1329 p. 869 n. 12.

Appeal from the District Court of Morton County, *Berry, J.*

Affirmed.

*W. H. Stutsman,* for appellants.

A corporation is a legal entity, and ordinarily will be treated as distinct from its membership. But a court of equity will look beyond this technical doctrine of existence independent of its shareholders when the rights of the parties require it. Especially is this true with respect to the rights of creditors. Re McCarthy Portable Elevator Co. 196 Fed. 247. See also Morawetz, Priv. Corp. 2d ed. 227, 229, 231 and 818.

If the corporation is insolvent, the directors are trustees for the creditors as well as the stockholders. Johnson v. United R. Co. 281 Mo. 90, 219 S. W. 38; Wabash Co. v. Iowa Co. 200 Iowa, 334, 202 N. W. 595.

A purchase of corporation assets at a judicial sale by a director with knowledge that the company is insolvent may be avoided by a creditor. Jones v. Arkansas, 35 Ark. 17.

A director or managing officer is precluded by his position from acquiring any interest in property adverse to that of the corporation. Where he does so he will be deemed to hold as a trustee for the stockholders. 14 C. J. 121.

*Alfred Zuger* and *C. Liebert Crum,* for respondents.

"Where the cestui que trust cannot be injured, by reason of his title being entirely gone, the purchase of the trustee cannot and ought not to be held subject to the trust which is virtually extinguished by the destruction of its subject-matter, unless the conduct of the trustee, or some advantage he acquires by reason of this relation, should warrant the courts in creating a new trust, or extending the old one so as to embrace a new title." Heirs v. Evans, 26 Mo. 30.

ENGLERT, Dist. J. The plaintiffs brought this action to quiet title to the west half and the northeast quarter of section twenty-two; and the west half of section twenty-one, all in township one hundred thirty-eight, north of range eighty-eight, west of the fifth P. M., in Morton county, North Dakota. The complaint is in the form provided for by statute to determine adverse claims or possession to real property.

The plaintiffs base their title upon a certain judgment wherein

Hercules Powder Company, a corporation, was plaintiff, and the Spring Valley Products Company, a corporation, was defendant, entered on the 23d day of December, 1922, for the sum of $1,387.60. The defendants mentioned in the caption of the complaint did not answer, and judgment was taken against them by default. B. H. Deters, Rachel N. Deters, W. F. Deters, Alvin W. Defiel, Charles A. Mull, E. A. Sprague, A. F. Gumphrey, Mrs. A. F. Gumphrey, E. J. Foss, A. Holritz, John S. Lomman, H. E. Aldrich, Isaiah Coffman, C. A. Arpke, T. McHaffie, W. H. Stutsman, C. G. Knoefel, Edwin J. Stegner, Arthur Stegner, Laura E. Stegner, E. W. Ostergren, Dan Ostergren, John Christianson, H. G. Gervig, J. A. Gervig, David Cannell, Esther Cannell, and Theodore Matthieu were proceeded against as unknown defendants, and they appeared and answered, setting forth: (1) that the Spring Valley Products Company executed and delivered to one Frank Reed, as trustee, on May 1, 1923, a trust mortgage, on the land here in question, to secure 250 promissory notes, aggregating $50,000, and that these defendants were purchasers and are holders of said notes, and that the then board of directors of the Spring Valley Products Company was in duty bound to pay the said Hercules judgment, and other liens and mortgages, so that the said trust mortgage would be a first lien upon the premises; and (2) that the plaintiffs were stockholders and officers of the Spring Valley Products Company and its successor, the Glen Ullin Coal Company, and active in the management of its business, and secured title to the premises here involved, "for the sole purpose and with the inevitable effect of defrauding the beneficiaries of said trust deed and of depriving them of the security guaranteed to them in said trust deed." The defendants pray that the trust mortgage be adjudged a valid lien upon the said property, prior and superior to the rights and claims of the plaintiffs, and that the plaintiffs' claim and title be adjudged null and void.

The trial court found that the plaintiffs are the owners in fee simple of the property here involved, and that the defendants have no estate, right, title, claim or interest in the said property, and entered judgment quieting the title to said premises in the plaintiffs. The answering defendants appealed from that judgment and have asked for a trial de novo here.

The Spring Valley Products Company was incorporated under the laws of North Dakota on January 12, 1920, with principal place of busi-

ness at Glen Ullin, North Dakota. It purchased the land in question for the purpose of operating a coal mine on a large scale. In order to take care of pressing claims, mortgages and liens, it was then decided to raise $50,000 by giving a trust mortgage to one Frank Reed, as trustee, on the land in question, and all machinery, tools, supplies, live stock, and all other personal property owned and kept by said company on said land. The mortgage was executed on May 1, 1923, and recorded June 15, 1923. It secured two hundred fifty promissory notes, all dated May 1, 1923, bearing 7% interest, and due May 1, 1928. The notes were divided into the following series and amounts:

| Series A. | ......................... | 15 notes of $ 200.00 each. |
| Series B. | ......................... | 40 notes of $ 50.00 each. |
| Series C. | ......................... | 150 notes of $ 100.00 each. |
| Series D. | ......................... | 30 notes of $ 500.00 each. |
| Series E. | ......................... | 15 notes of $1000.00 each. |

The trust mortgage provided that Frank Reed, as trustee, should hold the mortgage in trust for such persons as should purchase the notes secured thereby, and should receive and pay over to the mortgagor all moneys received from the sale of said notes. It provided that the company should set aside two thousand dollars on January 1, 1924; four thousand dollars on January 1, 1925; six thousand dollars on January 1, 1926; and eight thousand dollars on January 1, 1927, as an amortization fund to be applied by the trustee upon said notes. It empowered the purchasers of said notes to make by-laws, rules and regulations relative, "to the carrying out of the terms and provisions of this mortgage; . . . it is agreed that they may form an association and establish a constitution and by-laws for the carrying out of any action that they may deem necessary to take in order to conserve their collective interests under this mortgage." The mortgagor therein covenanted that the property "is free and clear of all encumbrances and liens whatsoever except mortgages and liens of record." In addition to the usual terms of a promissory note, the trust notes had printed on the face thereof a detailed description of all the property securing the same. It was the understanding that the money raised on the sale of those notes should be placed in escrow in the Bismarck Bank until the amount of $30,000 was realized. It was then to be paid over to the Spring Valley Products

Company. If that amount was not raised by June 16, 1923, the amounts paid in were to be returned to the respective purchasers of said notes. It was the general understanding that the indebtedness of the company, including liens and judgments, was to be paid from the money realized on a sale of the trust notes.

The record is not clear as to just how much in actual cash was raised on the sale of those notes. There are various reports showing that $32,200 was subscribed for. But the greater portion of that amount consisted of promises to buy and promises to exchange old indebtedness for trust notes. On July 6, 1923, the trustee, Frank Reed, issued a check to E. P. Crain, treasurer, on the Bismarck bank, for the sum of $6,993.40. This amount was deposited by the treasurer in the Merchants State Bank of Glen Ullin to the credit of the Spring Valley Products Company. On July 11, 1923, the Bismarck bank, in which the money was to be deposited and kept in escrow until the amount of $30,000 was realized, reported that up to that period no additional cash had been deposited therein. On July 12, 1923, the secretary of the Spring Valley Products Company reported the total sum of $11,093.40 cash realized. He testified, however, that the amount represented by the trustee's check of July 6th, was the only amount that was turned over to him on the sale of the trust notes. The secretary accounts for the difference between $6993.40 and $11,093.40 by the fact that A. F. Gumphrey sold trust notes and deposited the money in the Merchants State Bank of Glen Ullin, to the credit of the Spring Valley Products Company.

The necessary amount of money to keep the mine going and to pay pressing obligations was not forthcoming. A special meeting of the stockholders was then called for June 27, 1923, for the purpose of amending the articles of incorporation, changing the name from Spring Valley Products Company to Glen Ullin Coal Company and increasing the number of directors from three to seven. Such change was made and the amended articles were filed in the office of the Secretary of State under date of July 5, 1923. At that stockholder's meeting, "a bunch of stockholders at St. Paul stated that if they were given a majority of the Board of Directors in that locality there would be no trouble to raise the money needed, . . ." At that meeting the three old directors were re-elected, and the new members elected were B. H. Deters, A. F. Gum-

phrey, Alvin W. Defiel, and E. A. Sprague. Deters, Gumphrey and Defiel resided in St. Paul, and Sprague at Caledonia, Minnesota.

The members of the old board gave over control of the company and the management of its business to the new members. The new members removed the furniture, books and records of the company from the head office at Glen Ullin, North Dakota, to St. Paul, Minnesota. No more funds were raised and no obligations, liens or judgments against the Spring Valley Products Company were paid. The mine remained at a standstill, and was later closed. No annual stockholders meeting had been called. No annual corporation report had been made and filed with the Secretary of State. The charter of the Glen Ullin Coal Company was, therefore, cancelled on the records of the office of the Secretary of State under date of October 30, 1924. A special committee of stockholders called a meeting of stockholders, and on August 4, 1924, a new board was elected, composed of C. G. Boise, Susanna Hultberg, George Newcomb, E. P. Crain, Andrew Lidstrom, J. T. Nelson and B. H. Deters. When the new board took charge, the company owed the Northern Pacific Railroad $10,755.93 for steel rental on six miles of railroad track; $2,600 on gasoline locomotive; $1,800 Workmen's Compensation Bureau premiums, and a lien of $1,000 for powder, and, in addition thereto, the amounts that were owing on the fifty thousand dollar trust mortgage. In September, 1924, the new board tried to raise $100,000 with which to pay off existing obligations, including the amounts subscribed for under the fifty thousand dollar trust mortgage, but were unable to raise any money whatever on the security. The directors gave their personal notes in an effect to raise funds to re-open the mine and keep it going. The company was hopelessly involved, and, for lack of money or credit, was compelled to close the mine on March 15, 1925. Meanwhile, the books and records of the company remained in St. Paul. They were not returned to the North Dakota office until March 2, 1925. The furniture of the company had been levied upon in St. Paul and sold on execution for nonpayment of office rent. Execution was issued on the Hercules judgment, hereinbefore mentioned, and the property in question levied upon on April 7, 1923. On May 22, 1923, all the right, title and interest of the Spring Valley Products Company in and to the property here involved was sold on execution sale and the same bid in and purchased by the judgment debtor. On

that day a sheriff's certificate was issued to the Hercules Powder Company and recorded May 25, 1923. The time for redemption from said execution sale expired May 22, 1924. One A. M. Brandt had been a stockholder in the Spring Valley Products Company and was a stockholder in the Glen Ullin Coal Company to the amount of six thousand dollars and had purchased of the mortgage notes in the sum of one thousand dollars. In August, 1925, he learned through C. G. Boise that the Hercules Powder Company, under its judgment, had sold all the right, title and interest of the Spring Valley Products Company, and its successor, in the land in question. On request of A. M. Brandt, C. G. Boise ascertained that an assignment of the sheriff's certificate could be gotten from the Hercules Powder Company for the sum of $500. This amount was paid by A. M. Brandt, and the Hercules Powder Company assigned the sheriff's certificate of sale to him on September 1, 1925. This assignment was recorded on September 15, 1925. On September 16, 1925, the sheriff of Morton county issued a sheriff's deed to A. M. Brandt. This deed was recorded on September 17, 1925. On September 21, 1925, A. M. Brandt formed and established the Glenn Ullin Trust with O. O. Lee, Gilbert E. Peterson, Nick Barbie, Henry Burman, E. P. Crain, C. G. Boise, and A. W. Lidstrom, as trustees. This trust agreement was recorded on September 25, 1925. On September 21, 1925, A. M. Brandt conveyed, by warranty deed, the premises here in question to the trustees mentioned in the said trust agreement. This deed was recorded on September 26, 1925. Under and by virtue of the said trust agreement, the trustees agreed to manage and operate the said mine, the property here involved, for the use and benefit of the said A. M. Brandt, and of all those that might avail themselves of the terms, conditions and provisions therein set forth.

There is no question raised as to the validity of the Hercules judgment. It is the claim of appellants that the "debts were to be paid from the proceeds of bond sale and bondholders were to have a first lien on mine property." This is the first point set forth and argued at length in their brief. They base their claim upon the theory that the directors elected on January 17, 1923, were in duty bound to pay the Hercules judgment with other liens and mortgages, and in violation of that duty permitted the property to be sold on execution sale and then fraudulently purchased and secured an assignment of the sheriff's certificate of

sale, and acquired title to the premises for the purpose of defrauding the owners of mortgage notes and stockholders. There can be no serious question but what it was the general understanding and agreement that the company's liens and mortgages were to be paid, including other pressing obligations, out of the money realized from the sale of trust mortgage notes.

It is necessary, then, to determine whether there was any fraud in connection with the nonpayment of the Hercules Powder Company's judgment. Appellants proceed on the theory that nonpayment of the Hercules judgment was all due to the intentional omission of the board of directors elected on January 17, 1923. The action by the Hercules Powder Company was commenced on August 4, 1922, and service therein was made upon David Cannell, vice president of the Spring Valley Products Company, defendant. At that time the board of directors was composed of H. H. Lidstrom, president, David Cannell, vice president, and H. A. Waner, secretary. This board remained in control of the affairs of the Spring Valley Products Company until January 17, 1923. At that time a new board was elected, consisting of J. H. Worst, president, M. Tschida, vice president, and E. P. Crain, secretary. The mine was a losing business venture from the beginning. On January 17, 1923, its "obligations were over $40,000 above the good bills receivable." By that time, "the former board had mortgaged everything; there was no money on hand, in fact the earnings had been mortgaged ahead in the amount of $5,480.' So that when the first pay day rolled around there was nothing with which to meet it. There was no credit and the mine was forced to shut down." It is the claim of the appellants that $32,200 worth of trust mortgage notes were sold, and that the money was turned over by the trustee to E. P. Crain, secretary of the company, and that E. P. Crain should have paid the Hercules judgment. That failure to do so amounted to a breach of faith and a fraud upon the stockholders and mortgage note holders of the company. But the record does not bear out this contention. The facts disclose that at most only $11,093.40 was realized in actual cash on the sale of the mortgage notes, and that of this amount only $6,993.40 was turned over to E. P. Crain, and by him deposited to the credit of the company. He also testified that no money came into his hands, as an officer of the company prior thereto. So it would clearly appear that

the company had no funds whatever other than the amounts realized on the trust mortgage note sales.

Just what claims were paid and the exact amounts thereof do not clearly appear on the record. It does appear that several years back taxes on the mine property were paid, and tax sales redeemed from. One mortgage of $1,650 to Ella Cannell was paid. Another mortgage, the amount of which does not appear, to the First National Bank of Coal Springs, Minnesota, was paid. Two thousand dollars on a large amount due the Northern Pacific Railway Company was paid to prevent the rails from being taken up on the track leading to the mine. A. F. Gumphrey paid out fifteen hundred dollars. G. H. Russ, cashier of the Bismarck bank, paid "off a number of pressing claims." In their brief appellants say: "Just what became of this money does not appear, but it unquestionably was devoted to paying the miners' claims, the Northern Pacific Railway Company, and other more pressing claims (sic) than those of making the title to the mortgaged property good, though they were expressly secondary to the promises to the bond holders to pay off the liens against the land." It is, therefore, conceded by appellants that the money was devoted to the payment of legitimate obligations of the company. But it is argued that those claims were secondary, and not as important to the Hercules Powder Company's judgment. But would they not all have led to the same result, and probably much sooner than by letting the Hercules judgment remain unpaid for a time? The company had a year within which to redeem from the execution sale. Had sufficient money been realized on the sale of the trust mortgage notes, the Hercules judgment would undoubtedly have been paid. Some nine hundred dollars was paid thereon. So it is apparent that there was no intentional design of letting it ripen into title to the land in favor of the Hercules Powder Company.

It should also be noted that among the appellants charging bad faith are those that were members of the board of directors of the company from June 27, 1923, before the money was turned over by the trustee to Crain on July 6, 1923. At that time Deters, Gumphrey, Defiel and Sprague were in control of the company, and A. F. Gumphrey was general manager and had had full charge of the company's business since April, 1923. On August 9, 1923, E. P. Crain resigned as secretary-treasurer and director of the company. Alvin W. Defiel was made

secretary-treasurer. A. F. Gumphrey countersigned all checks, and while the record does not show from just what date he did so, there is no claim that any of the funds were misappropriated. Those parties remained in control of the affairs of the company for nearly a year prior to the expiration of the period of redemption from the judgment sale. Both Gumphrey and Deters knew of the existence of the judgment. Mr. Deters is the only one of appellants that testified during the trial of the case, and he stated that it was agreed and understood that all liens, mortgages, and this judgment in particular, were to be paid from money realized on the sale of mortgage notes, and thus make the trust mortgage a first lien on the mine property. But it is apparent that the money expected to be realized on sales of trust mortgage notes was not forthcoming. It is also clear that the amount which was actually paid was enough to only temporarily relieve the financial burdens of the company. The company was unable to raise any further funds, and as a result its property and business were neglected, its treasury empty, and the mine was closed. Mr. Deters, when asked whether there was any money in the treasury with which the judgment could have been paid, answered: "I don't think there was." In view of the fact that the officers could not, or at least did not, raise enough money to pay their office rent in St. Paul, and permitted the company's office furniture to be sold for nonpayment of rent, may well justify the conclusion that the company was hopelessly involved and its credit gone. We are unable to see where appellants have shown any bad faith or fraud on the part of certain officers of the company for nonpayment of the Hercules judgment.

As said in Berggren v. Callahan, 55 N. D. 421, 214 N. W. 36:

"Fraud must be proved. It is never presumed. The law presumes that dealings are fair and honest. It is not enough to allege fraud and prove some suspicious circumstances, but every material element constituting the charge and cause of fraud must be proved. Fraud may be established by circumstances, but they must be so strong as to produce a conviction of the truth of the charge."

In passing, we may also advert to the fact that the beneficiaries under the trust mortgage had a right to redeem from the execution sale, if they thought the property was worth it, but they did not avail themselves of that right.

It is the claim of appellants that, in forming the Glen Ullin Trust, on September 25, 1925, the trustees violated a fiduciary relation which they owed to the Spring Valley Products Company and its successor, the Glen Ullin Coal Company. It is argued that because some of the trustees had been, for some time prior thereto, directors of the Glen Ullin Coal Company, the rule announced in Hoyt v. Hampe, — Iowa, —, 214 N. W. 718, is controlling here. The principles there announced are well settled and established that directors are primarily trustees for the corporation and its stockholders. But what do we find here? A. M. Brandt, while a stockholder in the Glen Ullin Coal Company to the amount of $6,000, and a purchaser of trust mortgage notes in the sum of $1,000, had never been an officer or director of this company, or its predecessor. C. G. Boise learned that title to the premises had ripened in the Hercules Powder Company in August, 1925. It was not until then that E. P. Crain knew anything about the land having been sold on execution sale. The other directors, now trustees, had no knowledge of it. Brandt did not act in conjunction with other stockholders to defraud the company, its creditors or its stockholders. He acted as an individual to save his own investment and used his own moneys to pay for the assignment.

At the time A. M. Brandt secured an assignment of the sheriff's certificate from the Hercules Powder Company, all right, title and interest of the beneficiaries under the trust mortgage, the stockholders of the company, the creditors, and the former owners of the premises, were lost. Title had ripened in the Hercules Powder Company. The fact that the Hercules Powder Company had not secured a sheriff's deed is not at all material. As said in State ex rel. Forest Lake State Bank v. Herman, 36 N. D. 177, 161 N. W. 1017:

"The law makes it the ministerial duty of the sheriff to execute the deed immediately upon the expiration of the period of redemption. This being true, the substantial rights of the debtor and of the various redemptioners must be judged as though this ministerial act had been performed."

Without reviewing in detail the cases cited and relied on by appellants, we may say that they deal with instances where the stockholders, acting as a unit, have attempted to injure third persons. We know of no principle of law, equity or justice that could have compelled A. M.

Brandt to purchase the premises from the Hercules Powder Company for the use and benefit of the Glen Ullin Coal Company, its stockholders, or any of its lien holders or creditors. Had the directors of the Glen Ullin Coal Company purchased the title from the Hercules Powder Company, a more serious question would have presented itself for solution. But Brandt was not a director. Under the facts in this case a constructive trust would not result (unless fraud were shown), since those complaining had no beneficial interest left in the property on which a trust could be declared. As said in Price v. Evans, 26 Mo. 30:

"But in the absence of fraud and in the absence of possession, I have not seen any case where it has been held that such purchases shall inure to the benefit of the cestui que trust, where the cestui que trust had at the time of such acquisition no title."

It follows that the judgment of the district court ought to be affirmed with costs to respondents. It will be so ordered.

CHRISTIANSON, BIRDZELL, BURKE, and BURR, JJ., concur.

Mr. Chief Justice NUESSLE did not participate, Honorable M. J. ENGLERT, Judge of the First Judicial District, sitting in his stead.